MARRIOTT CORPORATION, a corporation, Plaintiff,

v.

NORFOLK AND WESTERN RAILWAY COMPANY, a corporation, Defendant.

No. 69 C 406(2).

United States District Court,
E. D. Missouri, E. D.

Oct. 22, 1970.

---

James W. Herron, Lewis, Rice, Tucker, Allen & Chubb, St. Louis, Mo., for plaintiff.

Albert E. Schoenbeck, St. Louis, Mo., for defendant.

MEREDITH, District Judge.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This matter was tried to the Court without a jury. The Court makes the following findings of fact and conclusions of law:

*Findings of Fact*

Plaintiff delivered certain canned goods in freight car PFE 453081, on or about May 22, 1968, to the Union Pacific Railroad Company for shipment from Coldspur, Kansas, to Blandensburg, Maryland. The goods were in good condition and were delivered to defendant on or about May 24, 1968, and were in defendant's possession on May 25, 1968, at about 7:35 a. m., when defendant's cars were derailed and the goods were damaged.

The Uniform Bill of Lading under which the goods were delivered to Union Pacific Railroad reads in part as follows:

"Sec. 1. (b) No carrier or party in possession of all or any of the property herein described shall be liable for any loss thereof or damage thereto or delay caused by an act of God, * * *"

Plaintiff is a corporate citizen of the State of Delaware and defendant is a corporate citizen of the State of Virginia, with principal place of business of each outside the State of Missouri.

The derailment occurred in the Eastern Division of the Eastern District of Missouri. The amount in controversy is $11,661.14, which is the difference between the plaintiff's claimed damages of $18,261.14 and $6,600.00 derived from the salvage, which was tendered by the defendant to the plaintiff and the plaintiff has agreed to accept.

On May 24th, the tracks where the derailment occurred were physically inspected and found to be in good condition. Seven trains operated over the tracks during the twenty-three hour period preceding the derailment without incident and with no evidence of high water or flooding.

At the point of derailment the tracks run generally east and west. Spencer Creek flows generally from south to north. There is a railroad bridge over Spencer Creek approximately sixty feet

in length, and immediately west of the bridge on Spencer Creek the tracks curve sharply.

Between 3:00 a. m. and 7:00 a. m., on May 25, 1968, five or more inches of rain fell in the Spencer Creek watershed, which was extraordinary, unusual, and had not happened for twenty years prior to this incident. The heavy rains caused Spencer Creek to flood and the water ran out of its east bank into a ditch along the south side of the tracks. It undermined the roadbed and tracks of the railroad by flowing north under the tracks and between the ties at a point approximately four to five hundred feet east of the Spencer Creek Bridge.

The train carrying the plaintiff's goods consisted of three locomotives and eighty-three cars, some loaded and some empty. The three locomotives weighed approximately 800,000 pounds and each loaded car weighed in excess of 130,000 pounds. The train moved eastwardly, rounded the curve west of Spencer Creek, traveling at a speed of forty-five to fifty miles per hour. It was raining at the time. The first opportunity the engine crew had to see ahead to the point of derailment was after rounding the curve, which is west of Spencer Creek Bridge. To stop the train in question takes one-half mile with an emergency application of the brakes. It takes one mile to stop the train with a normal application of the brakes. At the point when the defendant's train rounded the curve west of Spencer Creek Bridge, it could not have been stopped in sufficient time to avoid the derailment or to decrease the damage to the goods in question.

When the lead locomotive reached a point approximately four to five hundred feet east of the Spencer Creek Bridge, the engineer and head brakeman saw water between the rails in a small area. There was water to the south of the tracks in a ditch. As the lead locomotive reached the point where the water was running across the tracks and between the rails, the engineer felt the engine sink or shift. He reached for the brake valve, intending to make a service application of the brakes, but the brakes themselves applied themselves in an emergency application. The three locomotives and the first nine cars passed over the point where the water ran under the tracks and between the rails and at that point the train broke in two. Thirty-nine cars were derailed, including PFE 453081.

The derailment was caused by the unusual and unprecedented rainfall in the Spencer Creek watershed and the unusual flooding of the creek, which undermined ballast and weakened the roadbed. The washed-out area in the roadbed was small at the time of derailment and not readily ascertainable.

The defendant's employees operated the train in a careful and prudent manner and they were not negligent.

### Conclusions of Law

This Court has jurisdiction by virtue of diversity of citizenship and the amount in controversy exceeds $10,000.-00.

The cause of the derailment and the consequent damage to the plaintiff's goods was an act of God, which was unforeseeable, which was the unusual and unprecedented rainfall which occurred between 3:00 a. m. and 7:00 a. m., on May 25, 1968. The employees of defendant were not negligent in any manner.

The plaintiff's cause of action will be dismissed at plaintiff's costs.

This findings of fact and conclusions of law supplements the judgment entered by the Court on September 17, 1970.